AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Western District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black TINNO U304AA telephone, ATT, IMSI 310410217233394, currently stored in the property room of the FBI | Case No. 20-SW-377 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A which is attached hereto and fully incorporated herein by reference

located in the _____Western_____ District of _____Tennessee_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT A which is attached hereto and fully incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1201 | Kidnapping |
| 18 U.S.C. 1591 | Sex trafficking by force, fraud, or coercion |

The application is based on these facts:
SEE ATTACHMENT B, AFFIDAVIT OF SPECIAL AGENT KEYOTTA SANFORD in support of Application for Search Warrant, which is attached hereto and fully incorporated herein by reference

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Keyotta Sanford, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____Telephone_____ *(specify reliable electronic means)*.

Date: 12/29/2020

City and state: Memphis, TN

_____
*Judge's signature*

U.S. Magistrate Judge Charmiane G. Claxton
*Printed name and title*

## ATTACHMENT A

## INFORMATION TO BE SEARCHED AND SEIZED

A. The property to be searched, a black TINNO U304AA, International Mobile Subscriber Identity (IMSI) 310410217233394, hereby known as the "Device", is presently stored at the FBI located at 225 N Humphreys Blvd Suite 3000, Memphis, Tennessee 38120.

B. The warrant authorizes the forensic examination of the Device for the purpose of identifying fruits, contraband, evidence, and instrumentalities of violations of Title 18 U.S.C. §§ 1201 and 1591, those violations involving Jeremy Fitzgerald and/or any co-conspirators, including as follows:

1. All stored electronic and wire communications and information in memory on the Device, including email, instant messaging, text messages, or other communications, contact lists, images, videos, travel records, information related to the identity of victims, and any other content or records on the Device;

2. All telephone numbers and direct connect numbers or identities assigned to the Device;

3. Call and direct connect history information, including incoming and outgoing numbers dialed or received;

4. Any text messages that were drafted, sent, or received;

5. Stored photographs, videos, and text messages;

6. GPS location history;

7. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

8. Records of Internet Protocol (IP) addresses and Wi-Fi networks used;

9. Records and information relating to commercial acts and sex trafficking, to include a search of any and all images;

10. Records or data related to kidnapping, threats and extortion, to include a search of any and all images;

11. Records or data relating to the use of Tagged, and/or other text messaging and dating applications;

12. Evidence of how the device was used and accessed, to determine the chronological context of access, use, and events relating to the crime(s) under investigation and to the device user;

13. Evidence relating to co-conspirators involving in committing the subject offenses or individual(s) who share access to accounts on the Device to be searched;

14. All bank records, check, credit card bills, account information, and other financial records;

15. The identity of the person(s) who created or used any user IDs, including records that help reveal the whereabouts of such person(s);

16. The identity of person(s) who communicated with the user ID about matter relating to the subject offenses.

17. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or store, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

18. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **Black TINNO U304AA Telephone, ATT, IMSI 310410217233394, currently stored in the property room of the FBI** | Case No. 20-SW-377 |

## ATTACHMENT B
## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, **Keyotta Sanford**, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the FBI assigned to the Memphis Division and have been a Special Agent since January 2019. I am currently assigned to the Crimes Against Children & Human Trafficking (CACHT) Task Force and investigate a range of crimes involving human trafficking and crimes against children violations including Title 18 U.S.C. §1201 and § 1591. I've participated in various trainings and investigations involving human trafficking and crimes against children and have executed numerous search warrants, including those involving searches and seizures of computers, digital media and electronically stored information.

2. I make this affidavit in support of an application for a search warrant authorizing the search of a **black TINNO U304AA, IMSI 310410217233394,** hereby known as the TINNO, and is currently stored at the FBI Memphis Division located at 255 N Humphreys Blvd, Memphis, Tennessee. The purpose of this application is to locate and seize items which constitute instrumentalities, fruits, and evidence of violations of Title 18 U.S.C §§1201 (Kidnapping) and 1591 (sex trafficking by force, fraud, or coercion).

3. The following information was obtained through observations and conversations of your affiant personally, through the assistance of other law enforcement agents and agencies, including their reports, and through other sources specifically named in this affidavit. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have seen forth only the facts that I believe are necessary to establish probable cause to believe that evidence of

1

*KS*
12/29/2020

violations of Title 18, U.S.C. §§1201 and §1591 will be located within the TINNO as described in **Attachment A**.

## APPLICABLE STATUES AND DEFINITIONS

4. Title 18, United States Code, Section 2251 (a)(1) makes it illegal to unlawfully seize, kidnap, or carry away and hold for ransom or reward, and transport the victim across a state boundary, when the victim of the offense has not attained the age of eighteen years; and the offender is an adult that is not related or has legal custody of the victim.

5. Title 18, United States Code, Section 1591, makes it unlawful for anyone to knowingly recruit, entice, transport or solicit by any means a person, and use force, fraud, or coercion to cause a person to engage in a commercial sex act.

6. The term "Subscriber Identity Module" (SIM) refers to an integrated circuit chip that is used to identify and authenticate subscribers on mobile telephone systems. Memory is also available on the SIM for storage of contacts and messages.

7. The term "Integrated Circuit Card ID" (ICCID) is a unique identifier assigned to a SIM card itself. Unlike other identifiers associated with the SIM, the ICCID does not change.

8. The term "International Mobile Subscriber Identity" (IMSI) refers to a unique identifier that is used by phone companies to identify the SIM on a mobile network.

9. The term "International Mobile Equipment Identity" (IMEI) is a 15 to 17 digit code used by network carriers to identify devices and is typically used to prevent a misplaced or stolen phone from initiating calls.

10. The "Internet", as used herein, refers to the global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communication with each other are in the same state.

11. The term "prostitute" refers to a person who engages in sexual activity for payment or compensation.

12. The term "pimp" or "trafficker" refers to an individual who controls and/or arranges clients for a prostitute and takes part of any earnings gained.

13. The term "escort website" refers to websites or classified as sites used to aid and assist in the advertising of prostitution.

KS
12/29/2020

14. The term "trick" refers to committing an act of prostitution (verb), or it can reference the person receiving the sexual services (also known as a "John").

15. The term "date" refers to the exchange or activity of prostitution.

## INVESTIGATION

16. On December 14, 2020, FBI Memphis was notified by a Task Force Officer (TFO) from the Southaven Police Department (SHPD) that a 2-year-old child had been left at a Goodwill located at Stateline Road and Airways Blvd in Southaven, Mississippi. The SHPD obtained surveillance video which showed a child as well as two adults exiting a vehicle at a gas station. The video was released to the public in order to obtain leads to identify who had abandoned the child.

17. Investigators were able to locate and speak with the mother of the child, A.S., who advised that she was in Nashville and that her son had been kidnapped. A.S. told FBI Agents that she had met a man she knew as J-Roc, later identified as Jeremy Fitzgerald, on the dating application Tagged. Fitzgerald had offered to have his sister, later identified as Turliscea Turner, watch her child so that they could go to the clubs in Nashville, TN. Once in Nashville, Fitzgerald told A.S. that she would need to get him money by working as a prostitute; however, she refused. Because she did not adhere to his demands, Fitzgerald left A.S. in Nashville. A.S. repeatedly attempted to contact Fitzgerald in regards to her son; however, Fitzgerald refused to answer her calls. A.S. contacted her sister in an attempt to reach out to Fitzgerald in order to get her child back; however, A.S. was told by her sister that Fitzgerald had demanded money for the child.

18. FBI Agents were able to identify the vehicle observed on surveillance, which showed the subjects and child exiting the vehicle. The vehicle was maroon in color and had a Georgia license plate number of RJQ8105. The vehicle was later observed on Germantown Parkway near I-240.

19. Law enforcement officers responded to the area and located the suspect vehicle, which was involved in a crash at Germantown Parkway and Moriarty Rd. The driver of the vehicle was identified as Jeremy Fitzgerald, who was taken into custody and transported to the

3

KF
12/29/2020

hospital. The wrecked vehicle was later towed to the Federal Bureau of Investigation in Memphis and secured in a secure parking lot.

20. On December 14, 2020, open source research showed the Georgia license plate RJQ8105 and VIN number 2FMDK48C68BB01678 were registered to Turliscea Turner. Turner was located inside of a Kroger at the intersection of Germantown Parkway and Moriarty Rd, wearing clothing which appeared to match one of the subjects captured on surveillance video in Southaven. The female was identified as Turliscea Turner and was transported to the Shelby County Sheriff's Office General Investigative Bureau.

21. On December 14, 2020, Turner was read her Miranda Rights and agreed to speak with FBI Agents. Turner advised that she was in a relationship with Fitzgerald. Fitzgerald had contacted her and asked if she would babysit a child, while he and another woman went to Nashville to make some money. Fitzgerald had gone out of town with other women to make money before, and Turner agreed to watch the child. Turner advised that she had kept the minor victim overnight.

22. Turner told Agents that on the following day, she was woken by Fitzgerald at approximately 8:00 a.m. Fitzgerald told her that they were going to take the child to either the police, fire department or the hospital. Turner was aware that Fitzgerald had spoken to another woman over the phone in reference to the child. Turner believed the discussion of money was associated with the return of the child.

23. Turner, Fitzgerald, and an unidentified male subject traveled from Tennessee into Mississippi and stopped at a gas station. Turner advised that she went into the gas station while Fitzgerald took the child out of the car. When she returned, Fitzgerald and the other male subject were already back in the vehicle. Turner was aware that the child was left at the Goodwill and was uncertain as to what prompted Fitzgerald to change plans regarding where to drop off the child.

24. Turner signed a consent to search form and identified the phone numbers (956) 338-8773 and (214) 399-5567, as belonging to Fitzgerald. Turner described Fitzgerald's mobile devices as a Galaxy S9 and a black prepaid phone. Turner advised she sent a picture of the child to Fitzgerald, in the event the mother was worried about him.

25. On December 14, 2020, Fitzgerald was read his Miranda Rights and agreed to speak with FBI Agents. Fitzgerald advised he met a woman, he knew as Mohawk (hereby

referenced as A.S.), on a dating site. Fitzgerald was aware that A.S. had a young son and that she wanted Fitzgerald to find someone to babysit. Fitzgerald contacted Turner who agreed to watch the child while he and A.S. went clubbing in Nashville, TN. Fitzgerald advised when they arrived at the club, he provided her money to go into the bar and mingle with patrons. Fitzgerald later advised Agents that he sent her into the bars to sell drugs while he waited outside. When questioned why he would do such a thing, Fitzgerald inferred he had hoped the activities would have eventually led to a "trick". Later that night, Fitzgerald and A.S. had an argument about money and Fitzgerald decided to return to Memphis without her.

26. On his way back to Memphis, Fitzgerald stopped to visit a friend in Brownsville, Tennessee. While in Brownsville, he used his friend's phone to speak with a woman he believed was the child's aunt. Fitzgerald advised he received threats from the sister of A.S. and he asked her if she had any money for him. When she refused to comply, Fitzgerald ended the conversation by telling her that he was not going to give the child back.

27. Fitzgerald returned to Memphis and picked up an unknown subject, and then went to pick up Tuner and the child. Fitzgerald told Agents he was aware of warrants he had in Shelby County. As such, he decided to cross the state line with the child and then pulled into a gas station. Fitzgerald saw the Goodwill and decided to leave the child there, before leaving the area.

28. Fitzgerald told Agents multiple times that evidence to corroborate his statement were on his mobile devices. When asked by Agents regarding the whereabouts of his cellular devices, Fitzgerald advised that they were still located within the vehicle observed by surveillance and later detained by law enforcement. Fitzgerald admitted to Agents that he had two mobile devices and Agents asked Fitzgerald if he was willing to provide the FBI with the passcodes. Ultimately, Fitzgerald would not provide the passcodes to both of his phones.

29. On December 15, 2020, a federal arrest warrant was executed on Fitzgerald and Turner for violation of Title 18, U.S.C. Section 1201.

30. On December 16, 2020, The FBI performed a forensic examination on Turner's phone, which was authorized via a signed consent to search form. Investigators observed multiple calls, messages, and self-identifying images between Turner and the phone number (956) 338-8773 and (214) 399-5567, which corroborated the devices belonged to Fitzgerald. Agents also observed on 12/13/2020 at around 1:29 p.m. (CST) messages between Turner and

KF
12/29/2020

phone number (956) 338-8773, in which Turner advised Fitzgerald's grandfather wanted him to "come get the baby". Fitzgerald responded, "we gotta get out of there ASAP". Turner later sent a picture of the minor victim with the message, "If she wanna see how he doing. He asked about her."

31. Investigators sent a subpoena to Verizon seeking subscriber information for the phone number (214) 399-5567. On December 21, 2020, Verizon provided the following:

    a. Name: TOMAQUA HARRIS

    b. Make/Model: GALAXY S9 PLUS MIDNIGHT BLACK

    c. IMSI: 311480585195199

32. Investigators sent a subpoena was sent to AT&T seeking subscriber information for the phone number (956) 338-8773. On December 17, 2020, AT&T provided the following:

    a. Name: PREPAID CUSTOMER

    b. Contact Email: JFITZGERALD092386@GMAIL.COM

    c. Make/Model: TINNO,U304AA

    d. IMSI: 310410217233394

33. On December 17, 2020, a federal search warrant was executed on a 2008 Red Ford Edge, Vehicle Identification Number (VIN) 2FMDK48C68BB01678 with Georgia license plate RJQ8105, which was stored at the FBI located at 225 N. Humphrey's Blvd, Memphis, TN. Agents observed and seized a Galaxy S9 with an Otterbox case and a black cell phone with the ATT logo. The black ATT phone appeared to be a TINNO U304AA.

## CONCLUSION

34. Based on my knowledge and experience, and the forgoing factual information, your affiant submits there is probable cause to believe that violations of 18 U.S.C. §§ 1201 and 1591 have been committed, and evidence of those violations is located in a **black TINNO U304AA, IMSI 310410217233394**. Your affiant respectfully requests that the Court issue a search warrant authorizing the search and seizure of items listed in **Attachment A**, which are incorporated herein by reference.

*KF*
*12/29/2020*

AND FURTHER, AFFIANT SAITH NOT.

_____
KEYOTTA SANFORD
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone, this 29th day of December, 2020.

_____
HON. CHARMIANE G. CLAXTON
United States Magistrate Judge

7

12/29/2020